**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **Martin A. Thomas,** | : |
| Plaintiff, | : Civil Action No. |
| v. | : **PROPOSED CLASS ACTION** |
| | : **JURY TRIAL DEMAND** |
| **Limitless Credit Repair LLC,** | : |
| Defendant. | : |

## CLASS COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is a consumer class action for damages under the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA").

### Jurisdiction and Venue

2. Jurisdiction arises under the CROA, 15 U.S.C. § 1679, and 28 U.S.C. §1331.

3. *In personam* jurisdiction exists and venue is proper, as Defendant resides in this district, and the offending conduct in this district.

### Parties

4. Plaintiff Martin Thomas ("Plaintiff" or "Mr. Thomas") is a consumer who resides in Cuyahoga County, OH.

5. Defendant Limitless Credit Repair LLC ("Limitless") is a business entity that regularly conducts business in the Southern District of Florida, which has a principal place of business located at 1825 NW Corporate Blvd., Suite 110, Boca Raton, FL 33431.

**Facts**

6. In approximately May 2022, Mr. Thomas saw marketing materials posted by Defendant on social media (TikTok channel: @limitless_credit_repair) advertising credit repair services. In those marketing materials, Defendant claimed that its services raised the credit scores of consumers.

7. Mr. Thomas was interested in improving his credit, so he followed the TikTok video to the website of Limitless.

8. Mr. Thomas called the Defendant to proceed with the services.

9. Mr. Thomas decided to proceed with the purchase of the credit repair services offered, and discussed the services with Austin Charbonneau, the CEO of Limitless.

10. Mr. Charbonneau emailed Mr. Thomas a "Credit Repair Service Agreement" which is referred to herein as the "Credit Repair Contract."

11. The Credit Repair Contract contains several inconsistencies and unlawful provisions and operates as a deception upon consumers.

12. For instance, the CROA prohibits credit repair organizations from charging or receiving any money for the performance of any agreed-to service before such service is "fully performed." 15 U.S.C. § 1679b(b). Here, the Credit Repair Contract required an up front fee of $249 for "document processing". However, the document processing fee is merely an end around to the prohibition of 15 U.S.C. § 1679b(b) so that Limitless can unlawfully charge an upfront fee for using boilerplate contracts to provide purported services to consumers.

13. This up-front fee is also a violation of 15 U.S.C. § 1679b(a)(4) of the CROA. The

CROA also makes it unlawful for any person to "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4).

14. The Credit Repair Contract requires payment of upfront fees before the performance of any services under the Credit Repair Contract.

15. The Credit Repair Contract specifies that services will not be provided until payment of the upfront fees, stating:

> "In exchange, I, Martin Thomas, agree to pay the following fees as outlined in the following fee schedule: 1. $249 At signup for document processing."

16. The CROA also provides that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter." 15 U.S.C. § 1679f(b).

17. The Credit Repair Contract violates 15 U.S.C. § 1679f(b) of the CROA by including a clause that releases Limitless Credit Repair, from "all matters of actions, causes of action, suits, proceedings, debts, dues, contracts, judgements, damages, claims and demands whatsoever in law or equity, for or by reason of any matter, cause, or things whatsoever as based on the circumstances of this contract."

18. The CROA further states that "[n]o services may be provided by any credit repair organization for any consumer – (1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) has been signed by the consumer." 15 U.S.C. § 1679d(a). Subsection (b) provides:

> No contract referred to in subsection (a) meets the requirements of this subsection unless such contract includes (in writing) –
>
> (1) The terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization for the consumer, including –
>
> (2) A full and detailed description of the services to be performed by the credit repair organization for the consumer, including –
>
> > a. All guarantees of performance; and
> > b. An estimate of –
> >
> > > i. The date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or
> > > ii. The length of the period necessary to perform such services;
>
> (3) The credit repair organization's name and principal business address; and
>
> (4) A conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows:
>
> "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancelation form for an explanation of this right."

19. The Credit Repair Contract does not state the total amount of payments by Plaintiff. It only states the amount due at signup and a charge of "$99 At the start of each new month of service."

20. The Credit Repair Contract does not state an estimate of the length of time necessary to perform the credit repair services.

21. The Credit Repair Contract does not include a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature, which

states: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancelation form for an explanation of this right."

22. The CROA at 15 U.S.C. § 1679e(b) requires that a duplicate form notice of each contract cancellation accompany the contract, stating:

> "You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date of contract is signed by you."
>
> "To cancel this contract, mail or deliver a signed, dated copy of this cancellation notice, or any other written notice to [name of credit repair organization] at [address of credit repair organization] before midnight on
>
> [date]
>
> "I hereby cancel this transaction,
>
> [date]
>
> [purchaser's signature]."

23. The Credit Repair Contract does not include a duplicate form notice of cancellation, or one that is separate from the Credit Repair Contract. Instead, a single purported "Notice of Right to Cancel" is embedded and part of the Credit Repair Contract.

24. The CROA requires credit repair organizations to provide a separate disclosure of rights. 15 U.S.C. § 1679c(b).

25. The Credit Repair Contract is not accompanied by a separate written disclosure of rights set forth in 15 U.S.C. § 1679c. Instead, the statement of rights is embedded and part of the Credit Repair Contract.

26. On information and belief, Defendant Limitless Credit Repair LLC, has used the same or substantially similar Credit Repair Contract in all their transactions with consumers seeking credit repair services.

27. The credit repair services provided to Mr. Thomas did not result in any meaningful benefit for him.

28. Defendant nonetheless charged and/or received from Mr. Thomas approximately $447.

29. On information and belief, Defendant failed to perform meaningful services for or improve the credit scores of Plaintiff, resulting in Plaintiff's complaint.

30. Defendant knew that Plaintiff had complained about not obtaining meaningful benefit from the purchased services.

31. Defendant has engaged in a pattern and practice of deception in the sale and provision of credit repair services.

## Class Allegations

32. Plaintiff brings this action on his own behalf and on behalf of a Class designated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

33. Plaintiff proposes to define the Class as follows:

    All persons in the United States with whom one or more Defendants entered into a contract for credit repair services in the five years preceding the filing of the Complaint.

34. The Class is believed to be so numerous that joinder of all members is impractical, as this case concerns Defendant's use of form contract documents with

respect to hundreds of consumers.

35. There are questions of law or fact common to the Class. These include:

(a) Whether Defendant's form contract violates the CROA;

(b) Whether Defendant's form contracts are void and unenforceable;

(c) Whether Defendant's charged or received upfront fees, in violation of the CROA;

(d) Whether Defendant used form contracts that required payment of upfront fees, in violation of the CROA;

(e) Whether Defendant used form contracts that attempt to waive CROA rights, in violation of the CROA;

(f) Whether Defendant used form contracts that failed to include the disclosures required by the CROA;

(g) Whether Defendant used form contracts that were not accompanied by a separate notice of cancellation in duplicate form as required by the CROA;

(h) Whether Defendant used form contracts that were not accompanied by a notice of cancellation in bold face type as required by the CROA;

(i) Whether Defendant used form contracts that were not accompanied by a separate statement of rights as required by the CROA;

(j) Whether Defendant's violations of the CROA entitle Plaintiff and the Class to actual damages under 15 U.S.C. § 1679g; and

(k) Whether and what amount of punitive damages are recoverable by

Plaintiff and the Class for Defendant's violations.

36. Plaintiff's claim is typical of the claims of the Class. Plaintiff and all Class members were required to sign illegal form contracts and pay unlawful upfront fees in exchange for credit repair services. All claims are based on the same factual and legal theories, and there are no individualized issues.

37. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff's counsel is competent and experienced in consumer credit cases and class actions.

38. The questions of law or fact common to the Class predominate over any questions affecting only individual members, as the primary focus is on Defendant's conduct and use of form contracts.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class Members are consumers who wanted to improve their credit, and who may be unable to locate or afford to hire lawyers because damages in an individual case are relatively small, and not likely to exceed the threshold for small claims cases.

40. Congress specifically contemplated CROA class actions as a principal means of enforcing the statute by private attorneys general. 15 U.S.C. § 1679g(a)(2)(B).

41. This class action covering consumers for the violation of the CROA is likely to be easily manageable because Defendant is statutorily required to maintain records on consumers, making identification of Class Members a simple task.

**Count One – Violations of the Credit Repair Organizations Act**

42. Plaintiff incorporates by reference all prior allegations as if set forth herein.

43. Defendant is a "person" as defined by the CROA.

44. Defendant is a "credit repair organization" as defined by the CROA.

45. Defendant violated the CROA by using form credit repair contracts that deceptively required payment of upfront fees, before services were fully performed, in violation of the CROA. 15 U.S.C. § 1679b(b).

46. In connection with the offer of sale of credit repair organization services, Defendant directly or indirectly engaged in acts, a practice, or a course of business that constitutes a deception on a consumer and an attempt to commit a deception on a consumer, in violation of the CROA. 15 U.S.C. § 1679b(a)(4). This includes but is not limited to Defendant's use of illegal form credit repair contracts to steal upfront fees from consumers that Defendant was not legally permitted to charge or receive.

47. Defendant violated the CROA by using form contracts that attempted to waive the CROA rights of Plaintiff. 15 U.S.C. § 1679f(b).

48. Defendant violated the CROA by using form credit repair contracts that did not include all the written disclosures set forth in 15 U.S.C. § 1679d(b).

49. Defendant violated the CROA by using form credit repair contracts that failed to provide a duplicate form notice of cancellation separate from the credit repair contract, and in the required format. 15 U.S.C. § 1679e(b).

50. Defendant violated the CROA by using form credit repair contracts that were not accompanied by a separate disclosure of rights. 15 U.S.C. § 1679c(b).

51. Defendant provided services despite not meeting the requirements of 15 U.S.C. §

1679d(b), which violates 15 U.S.C. § 1679d(a).

52. Defendant knew about its obligations under the CROA.

53. Defendant intentionally, willfully, and recklessly violated the CROA.

**WHEREFORE,** Plaintiff Martin Thomas, on behalf of himself, demands judgment against Defendant for:

    a. Damages;

    b. Punitive Damages;

    c. Interest;

    d. Attorney's fees and costs; and

    e. Such other and further relief as the Court shall deem just and proper.

### Demand for Jury Trial

Plaintiff demands a trial by jury as to all issues so triable.

**THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
Richard Kim, Esquire
(*Pro Hac Vice to be Filed*)
1635 Market St., Suite 1600
Philadelphia, PA 19103
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com

BY: */s/ Bryant H. Dunivan Jr.*
Bryant H. Dunivan Jr., Esquire
Fla. Bar No.:102594

        MI P. No.:85206
        301 W. Platt St.,
        Tampa, FL 33606
        Ph: 813-252-0239
        bryant@theconsumerprotectionattorney.com

*Attorneys for Plaintiff Martin Thomas*

Date: May 16, 2023